JOSEPH H. HUNT
Assistant Attorney General
Civil Division
McGREGOR SCOTT
United States Attorney
BRINTON LUCAS
Counsel to the Assistant Attorney General
JAMES J. GILLIGAN
Acting Director, Federal Programs Branch
JACQUELINE COLEMAN SNEAD
Assistant Branch Director, Federal Programs Branch
DAVID SHELLEDY
Civil Chief, Assistant United States Attorney
JOSEPH BORSON (Va. Bar No. 85519)
KEVIN SNELL (NY Bar)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Telephone: (202) 305-0924
Fax: (202) 616-8460
E-mail:  Kevin.Snell@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his Official Capacity, and XAVIER BECERRA, Attorney General of California, in his Official Capacity,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Complaint

Plaintiff, the United States of America, by its undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## NATURE OF THE ACTION

1. In this action, the United States seeks a declaration invalidating and preliminarily and permanently enjoining the California Internet Consumer Protection and Net Neutrality Act of 2018, enacted through Senate Bill 822 ("SB-822"). SB-822 is preempted by federal law and therefore violates the Supremacy Clause of the United States Constitution.

2. The Communications Act, as amended by the Telecommunications Act of 1996, sets forth "the policy of the United States" to "preserve the vibrant and competitive free market . . . for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2). Consistent with that policy, in 2002, the Federal Communications Commission ("FCC") issued an order classifying broadband internet access provided over cable modems as an "information service" statutorily exempt from common carrier regulation under the Act. *Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities*, 17 FCC Rcd 4798 (2002). The FCC's decision was upheld by the Supreme Court in *National Cable & Telecommunications Ass'n v. Brand X*, 545 U.S. 967 (2005). For the next decade, the Commission adhered to that classification, and the Internet marketplace flourished.

3. In 2015, in a sharp (but brief) departure, the FCC reversed its longstanding determination and classified broadband internet access service as a "telecommunications service" subject to the Communication Act's common carrier requirements. *Protecting and Promoting the Open Internet*, 30 FCC Rcd 5601 (2015) ("2015 Order"). On the basis of that newly minted classification, the agency adopted a set of rules governing the conduct of broadband providers. Those rules prohibited providers from (1) "blocking" or "throttling" (degrading) lawful content, applications, services, or non-harmful devices, (2) engaging in "paid prioritization" (giving preferential treatment to certain Internet traffic either in exchange for consideration or to benefit an affiliated entity), or (3) "unreasonably interfer[ing] with or unreasonably disadvantag[ing]"

Complaint -1-

the ability of producers of Internet content, applications, services or devices—known as "edge providers"—to make their offerings available to users, or the ability of users to access the content, applications, services, and devices offered by edge providers. 30 FCC Rcd at 5659-69 ¶¶ 133-53.

4. In January 2018, the FCC released *Restoring Internet Freedom*, 33 FCC Rcd 311 (2018) ("2018 Order"), returning to its prior information service classification of broadband Internet access and, concluding that the "costs . . . to innovation and investment outweigh[ed] any benefits they may have," repealed the 2015 Order's rules governing the conduct of broadband providers. *Id.* ¶ 4.

5. The 2018 Order recognized that "regulation of broadband Internet access service should be governed principally by a uniform set of federal regulations, rather than by a patchwork that includes separate state and local requirements," and that such requirements "could impose far greater burdens" than the FCC's "calibrated federal regulatory regime," and threaten to "significantly disrupt the balance" the agency struck. *Id.* ¶ 194; *see id.* ¶¶ 197-204. Accordingly, the 2018 Order preempts "any state or local measures that would effectively impose rules or requirements that [the FCC] ha[d] repealed or decided to refrain from imposing in this order or that would impose more stringent requirements for any aspect of broadband service that [it] address[ed] in this order." *Id.* ¶ 195.

6. California, however, seeks to second-guess the Federal Government's regulatory approach by enacting SB-822. As the state acknowledges, SB-822 "codif[ies] portions of the recently-rescinded" 2015 Order and imposes "additional bright-line rules" that not even "the FCC opted" to embrace in 2015. Cal. S. Comm. on Judiciary, SB 822 Analysis 1, 19 (2018). As such, SB-822 squarely falls within the preemption provision of the 2018 Order and is unlawful.

7. Plaintiff therefore seeks a declaratory judgment that SB-822 is invalid under the Supremacy Clause and is preempted by federal law. Plaintiff also seeks an order preliminarily and permanently enjoining enforcement of the preempted provisions of SB-822.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

9. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants reside within the Eastern District of California and because a substantial part of the acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

10. The Court has authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, 2202, and its inherent equitable powers.

## THE PARTIES

11. Plaintiff is the United States of America.

12. Defendant, the State of California, is a state of the United States.

13. Defendant, Edmund G. Brown Jr., is the Governor of the State of California, and is being sued in his official capacity.

14. Defendant, Xavier Becerra, is the Attorney General for the State of California, and is being sued in his official capacity.

## CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS

15. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

16. The Communications Act of 1934 (the "Act"), as amended by the Telecommunications Act of 1996 (the "1996 Act") and other laws, establishes "the policy of the United States" to "preserve the vibrant and competitive free market that presently exists for the Internet . . . unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2). In the preamble to the 1996 Act, Congress set forth its goal of "promot[ing] competition and reduc[ing] regulation" to "secure lower prices and higher quality services for American telecommunications consumers" and to "encourage the rapid deployment of new telecommunications technologies." Pub. L. No. 104-104 pmbl., 110 Stat. at 56.

17. Section 2 of the Act, 47 U.S.C. § 152, addresses the division of federal and state authority over communications services. Section 2(b) of the Act expressly preserves state jurisdiction over *intrastate* communications, subject to any federal rules authorized under certain other provisions of the Act. *Id.* § 152(b) ("[C]harges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service" fall under state jurisdiction, "[e]xcept as provided" under certain other provisions). By contrast, Congress did not reserve any state authority over *interstate* communications, which instead are governed by federal law. *See id.* § 152(a) (granting the FCC jurisdiction over "all interstate and foreign communication" and "all persons engaged . . . in such communication"). The FCC thus is authorized to preempt inconsistent state and local regulation, including on the basis of the "impossibility exception to state jurisdiction" "[b]ecause both interstate and intrastate communications can travel over the same Internet connection . . . in response to a single query," 2018 Order ¶ 200, and the agency's "independent authority to displace state and local regulations in accordance with the longstanding federal policy of nonregulation for information services," *id.* ¶ 202.

18. Pursuant to these authorities, the 2018 Order expressly "preempt[s] any state or local measure that would effectively impose rules or requirements that [it] ha[s] repealed or decided to refrain from imposing in this order or that would impose more stringent requirements for any aspect of broadband service that [it] address[es] in this order." 2018 Order ¶ 195; *see also id.* ¶¶ 197-204. This includes "any so-called 'economic' or 'public utility-type' regulations, including common-carriage requirements akin to those found in Title II of the Act and its implementing rules, as well as any other rules or requirements that [the FCC] repeal[ed] or refrain[ed] from imposing" in the 2018 Order. *Id.* ¶ 195 (footnote omitted).

19. The 2018 Order repealed several measures imposed in the 2015 Order. In 2015, the FCC adopted three bright-line rules prohibiting Internet service providers ("ISPs") from blocking access to lawful websites ("blocking"); impairing or degrading access to Internet conduct (often referred to as "throttling"); and prioritizing the transmission of content for compensation ("paid prioritization"). 2015 Order ¶¶ 15-19. The 2015 Order further adopted a general Internet

Complaint -4-

conduct standard and certain transparency provisions. *Id.* ¶¶ 20-24.

20. The FCC determined, after careful study, that "the costs of [these 2015 rules] to innovation and investment outweigh any benefits they may have," 2018 Order ¶ 4, and thus their elimination "is more likely to encourage broadband investment and innovation, furthering [the] goal of making broadband available to all Americans and benefitting the entire Internet ecosystem," *id.* ¶ 86; *see also id.* ¶ 245 ("the substantial costs [of the 2015 rules]—including the costs to consumers in terms of lost innovation as well as monetary costs to ISPs—[are] not worth the possible benefits") (footnote omitted).

21. Accordingly, the FCC, among other things, repealed the blocking, throttling, and paid prioritization rules. It also concluded that the 2015 Internet conduct standard was "vague and had created regulatory uncertainty," *id.* ¶ 247, and thus repealed that former requirement. *Id.* ¶¶ 246-66.

22. The 2018 Order instead relies on modified transparency and disclosure requirements, market forces, and enforcement of preexisting antitrust and consumer protection laws. *See, e.g.*, *id.* ¶¶ 140-54, 240-45.

23. First, it retained, with some modifications, a "transparency rule" mandating that ISPs accurately disclose network management practices, performance, and commercial terms of services. *See id.* ¶¶ 215-31.

24. Second, the FCC recognized that "[o]ther legal regimes—particularly antitrust law and the [Federal Trade Commission's ("FTC")] authority under Section 5 of the FTC Act to prohibit unfair and deceptive practices—provide protection for consumers," 2018 Order ¶ 140; *see id.* ¶¶ 141-54, and that these protections are especially potent here because the transparency rule "amplifies the power of antitrust law and the FTC Act to deter and where needed remedy behavior that harms consumers," *id.* ¶ 244. To that end, the FCC entered into a memorandum of understanding with the FTC to share information and to assist that agency's policing specific unfair or deceptive acts. *See* Restoring Internet Freedom FCC-FTC Memorandum of Understanding, https://www.ftc.gov/system/files/documents/cooperation_agreements/fcc_

fcc_mou_internet_freedom_order_1214_final_0.pdf.

25. The FCC further "conclude[d] that regulation of broadband Internet access should be governed principally by a uniform set of federal regulations, rather than by a patchwork that includes separate state and local requirements," 2018 Order ¶ 194, and thus preempted inconsistent state and local regulations, *id.* ¶¶ 194-204.

26. The 2018 Order was released in January 2018, and took effect on June 11, 2018.

27. "[E]xclusive jurisdiction . . . to enjoin, set aside, suspend (in whole or part) or to determine the validity . . . of all" final FCC orders lies in the federal courts of appeals on direct review. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402. Although the validity of the 2018 Order is being challenged in the United States Court of Appeals for the D.C. Circuit, that Order remains in effect and must be presumed valid unless and until the D.C. Circuit holds otherwise. *See id.*; *see also Mozilla Corp. v. FCC*, Case Nos. 18-1052 et al. (D.C. Cir.).

### **CALIFORNIA SB-822**

28. On August 31, 2018, and notwithstanding the 2018 Order's effect, California's state legislature passed SB-822, which codifies the federal requirements that the 2018 Order eliminated and imposes additional restrictions on ISPs. Governor Brown signed the bill into law on September 30, 2018.

29. Specifically, SB-822 categorically bans blocking, throttling, and paid prioritization, SB-822 §§ 3101(a)(1), (a)(2), (a)(3)(B)-(C), (a)(4); *see also id.* § 3100(j), (r), and also adopts an Internet conduct standard that is nearly identical to the one repealed by the 2018 Order. *Id.* § 3101(a)(7). And though the 2018 Order "return[ed] Internet traffic exchange to the longstanding free market framework," 2018 Order ¶¶ 163-73, SB-822 appears to regulate traffic exchange, SB-822 §§ 3101(a)(3)(A), (a)(9). Additionally, California imposes more stringent requirements than the FCC in that SB-822 broadly prohibits companies from offering "free data" arrangements that exempt certain Internet traffic from data limitations, *id.* § 3101(a)(5), (a)(6), (a)(7)(B); *see also id.* § 3100(t), and apparently prevents ISPs from offering or providing a range of specialized services over the same last-mile connection, *id.* § 3102(a)(2).

30. **Blocking**. The 2018 Order repealed "the no-blocking . . . rule[]" because it "[was] unnecessary to prevent the harms that they were intending to thwart," 2018 Order ¶ 263, and because the costs of *ex ante* conduct rules exceed their benefits, *see id.* ¶¶ 322-23. Yet SB-822 makes it "unlawful" to "[b]lock[] lawful content." SB-822 §§ 3101(a)(1); *see also id.* § 3101(a)(3)(B) (prohibiting charges to avoid blocking) [collectively referred to hereinafter as "Blocking Provisions"].

31. **Throttling**. The 2018 Order similarly repealed the "unnecessary" "no-throttling rules." 2018 Order ¶ 263. Yet SB-822 forbids the "[i]mpairing or degrading [of] lawful Internet traffic on the basis of Internet content, application, or service, or use of a non-harmful device." SB-822 § 3101(a)(2); *id.* § 3100(j); *see also id.* § 3101(a)(3)(C) (prohibiting charges to avoid throttling) [collectively referred to hereinafter as "Throttling Provisions"].

32. **Paid Prioritization**. The 2018 Order "decline[d] to adopt a ban on paid prioritization." 2018 Order ¶ 253. Yet SB-822 makes it unlawful to "[e]ngage in paid prioritization." SB-822 § 3101(a)(4); *id.* § 3100(r) [collectively referred to hereinafter as "Paid Prioritization Provisions"].

33. **Internet Conduct Standard**. The 2018 Order repealed the 2015 Order's Internet conduct standard that it found "not in the public interest," 2018 Order ¶¶ 246-52; *see also* 2015 Order ¶ 136 (text of former Internet conduct standard). Yet SB-822 imposes a nearly identical standard, prohibiting "unreasonably interfering with[] or disadvantaging, either an end user's ability to select, access, and use broadband Internet access service or the lawful Internet content, applications, services, or devices of the end user's choice, or an edge provider's ability to make lawful content, applications, services, or devised available to end users." SB-822 § 3101(a)(7) [hereinafter "Internet Conduct Standard"].

34. **Internet Traffic Exchange.** The 2018 Order eliminated the 2015 Order's oversight of Internet traffic exchange agreements and "return[ed] Internet traffic exchange to the longstanding free market framework." 2018 Order ¶¶ 163-73. But SB-822 appears to regulate traffic exchange by prohibiting ISPs from charging edge providers for delivering traffic to end

users and by prohibiting any traffic-exchange agreements that could be construed as having the purpose or effect of evading other prohibitions. SB-822 §§ 3101(a)(3)(A), (a)(9) [hereinafter "Traffic-Exchange Provisions"].

35. **Zero-Rating**. SB-822 goes even beyond the 2015 Order by banning "[z]ero-rating," defined as "exempting some Internet traffic from a customer's data usage allowance," SB-822 § 3100(t), either (a) in exchange for consideration, *id.* § 3101(a)(5); *see also id.* § 3101(a)(7)(B), or (b) when doing so for only "some Internet content, applications, services, or devices in a category for Internet content, applications, services, or devices, but not the entire category," *id.* § 3101(a)(6) [hereinafter "Zero-Rating Provisions"]. Even in 2015, the FCC expressly declined to adopt that categorical approach, saying it would examine such practices only on a case-by-case basis. *See* 2015 Order ¶ 152. The 2018 Order not only declined to bar zero-rating programs, but expressly noted that, in the aftermath of the 2015 Order, the Wireless Telecommunications Bureau engaged in a "thirteen-month investigation" that "did not identify specific evidence of harms from particular zero-rating programs." 2018 Order ¶ 250.

36. **Specialized Services Provisions.** SB-822 also goes beyond the 2015 Order by extending its prohibitions to separate non-Internet services that are delivered over an ISP's last-mile transmission facilities. SB-822 § 3102(a) [hereinafter "Specialized Services Provisions"]. SB-822 does not define what services are prohibited by section 3102(a); it may be referring to what are sometimes known as "specialized services" (such as "facilities-based VoIP offerings, heart monitors, or energy consumption sensors," 2015 Order ¶ 35), although the prohibition is so broad that it might even apply to a provider prioritizing its co-packaged pay-TV services. Even the 2015 Order expressly excluded specialized services from the rules it applied to broadband Internet access service, except for narrow circumstances where it could be subject to limited oversight under the Internet Conduct Standard. 2015 Order ¶¶ 35, 207-13. SB-822 appears to subject specialized services to all of "the prohibitions in Section 3101," SB-822 § 3102(a)(1). Further, SB-822 prohibits any specialized services perceived to "negatively affect the performance of broadband Internet access service," *id.* § 3102(a)(2), which is plainly

inconsistent with the 2018 Order's repeal of the Internet Conduct Standard.

37. **Disclosure Provision.**  SB-822 further forbids "[f]ailing to disclose publicly accurate information regarding the network management practices, performance, and commercial terms . . . sufficient for consumers to make informed choices . . . ." SB-822 § 3101(a)(8) [hereinafter "Disclosure Provision"].  Although this language resembles a portion of the FCC's transparency rule, 47 C.F.R. § 8.1(a), it omits the 2018 Order's specific guidance addressing precisely what disclosures are and are not required, *see* 2018 Order ¶¶ 215-31.  To the extent this provision imposes disclosure obligations "in any way inconsistent with" those imposed by the FCC, *id.* ¶ 195 n.729, which is a substantial possibility in light of the lack of guidance and uncertainty of future application, it is preempted by the 2018 Order.  *See id.*

38. **Mobile Broadband Internet Access Service Provisions.**  The 2018 Order makes clear that "broadband Internet access service, regardless of whether offered using fixed or mobile technologies, is an information service under the Act," and that mobile broadband Internet access service "should not be classified as a commercial mobile service [i.e., requiring common carrier treatment] or its functional equivalent." 2018 Order ¶ 65; *see also id.* ¶¶ 65-85.  This conclusion, the Commission explained, "furthers the Act's overall intent to allow information services to develop free from common carrier regulations." *Id.* ¶ 82.  SB-822, by contrast, imposes the same common carrier rules described above on providers of mobile broadband Internet access services as it does on providers of fixed broadband Internet access services.  SB-822 §§ 3101(b), 3102(b) [hereinafter "Mobile Broadband Internet Access Service Provisions"].  SB-822 conflicts with the 2018 Order in this respect as well and is likewise preempted.

### COUNT ONE – PREEMPTION UNDER FEDERAL LAW

39. Plaintiff hereby incorporates paragraphs 1 through 38 of this Complaint as if fully stated herein.

40. The 2018 Order directly preempts SB-822's Blocking Provisions, Throttling Provisions, Paid Prioritization Provisions, Internet Conduct Standard, Traffic Exchange Provisions, Zero-Rating Provisions, Specialized Services Provisions, and Mobile Broadband Internet Access

Service Provisions.  To the extent SB-822's Disclosure Provision imposes disclosure obligations "in any way inconsistent with" those imposed by the FCC, 2018 Order ¶ 195 n.729, it is directly preempted by the 2018 Order.

41. In addition, SB-822 conflicts with the 2018 Order's affirmative federal "deregulatory policy" and "deregulatory approach" to Internet regulation, *see* 2018 Order ¶¶ 39, 61, 194-96, which the FCC adopted in furtherance of United States' policy "to preserve the vibrant and competitive free market that presently exists for the Internet . . . unfettered by Federal or State regulation," 47 U.S.C. § 230(b)(2).  SB-822 "impose[s] far greater burdens" than the FCC's "calibrated federal regulatory regime," and threatens to "significantly disrupt the balance" the agency struck. *Id.* ¶ 194.

42. SB-822 contributes to a patchwork of separate and potentially conflicting requirements from different state and local jurisdictions, and thereby impairs the effective provision of broadband services, *see* 2018 Order ¶ 194, as ISPs generally cannot comply with state or local rules for intrastate communications without applying the same rules to interstate communications, *see id.* ¶ 200.

43. In short, SB-822 conflicts with and otherwise impedes the accomplishment and execution of the full purposes and objectives of federal law.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

a. A declaratory judgment stating that the preempted provisions of SB-822 are invalid, null, and void;

b. A preliminary and a permanent injunction against the State of California, and its officers, agents, and employees, prohibiting the enforcement of the preempted provisions of SB-822;

c. That this Court award the United States its costs in this action; and;

d. That this Court award any other relief that it deem just and proper.

Complaint -10-

| | |
|---|---|
| Dated: September 30, 2018 | Respectfully submitted, |
| | JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division |
| | McGREGOR SCOTT<br>United States Attorney |
| | BRINTON LUCAS<br>Counsel to the Assistant Attorney General |
| | JAMES J. GILLIGAN<br>Acting Director, Federal Programs Branch |
| | JACQUELINE COLEMAN SNEAD<br>Assistant Branch Director, Federal Programs Branch |
| | DAVID SHELLEDY<br>Civil Chief, Assistant United States Attorney |
| | /s/ Kevin Snell_____<br>JOSEPH BORSON (Va. Bar No. 85519)<br>KEVIN SNELL (NY Bar)<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L St. NW<br>Washington, DC 20530<br>Telephone: (202) 305-0924<br>Fax: (202) 616-8460<br>E-mail: Kevin.Snell@usdoj.gov |
| | *Attorneys for the United States* |

Complaint                                                           -11-