XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
SARAH E. KURTZ
Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
P. PATTY LI, State Bar No. 266937
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 510-3817
  Fax: (415) 703-1234
  E-mail:  Patty.Li@doj.ca.gov
*Attorneys for Defendants the State of California, Governor Gavin C. Newsom, and Attorney General Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,**<br><br>                      Plaintiff,<br><br>v.<br><br>**THE STATE OF CALIFORNIA, et al.,**<br><br>                      Defendants. | 2:18-cv-02660-JAM-DB<br>2:18-cv-02684-JAM-DB<br><br>**DECLARATION OF THOMAS S. NAKATANI IN SUPPORT OF OPPOSITION TO PRELIMINARY INJUNCTION MOTIONS**<br><br>Judge:    The Hon. John A. Mendez<br>Actions Filed: Oct. 1, 2018; Oct. 3, 2018 |
| **AMERICAN CABLE ASSOCIATION, CTIA – THE WIRELESS ASSOCIATION, et al.,**<br><br>                      Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California,**<br><br>                      Defendant. | |

I, Thomas S. Nakatani, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I have personal knowledge of the following facts, and, if I am called as a witness in a relevant proceeding, I could and would testify competently to the following facts.

2. I submit this declaration in connection with the defense oppositions to motions for preliminary injunctions in the above-entitled lawsuits.

3. I am Vice President, IT – Monitoring Technology, at ADT Inc. ("ADT"). I have held this position for four (4) years. My job responsibilities include overseeing integration of ADT's core residential and commercial products, as well as of the signaling and application infrastructure for monitoring our customers. I have worked for ADT in some capacity for a total of thirty (30) years.

4. ADT has been providing alarm services for over one hundred forty (140) years. ADT is currently the largest provider of home and business automation and alarm monitoring services in the United States, serving more than seven million (6,500,000) residential and commercial customers. ADT has sixteen (16) service offices in the State of California. ADT also has a dealer program in which independent security companies sell and install alarm systems monitored by ADT. There are fifty (50) ADT dealers operating in the State of California. ADT monitors alarm systems in over eight hundred fifty thousand (850,000) homes and businesses across California.

5. Consumers, schools, businesses, commercial/industrial properties, and governments all depend on reliable security and monitoring services, whether they are dealing with life safety threats resulting from an intrusion, a health crisis, a flood, carbon monoxide (CO) threat, or a fire. Such services require reliable and immediate connections to professional alarm monitoring centers and, in turn, public safety officials and first responders.

1

Declaration of Thomas S. Nakatani in Support of Opposition to Preliminary Injunction Motions
(2:18-cv-02660-JAM-DB) (2:18-cv-02684-JAM-DB)

6. Small packets of alarm data can run over traditional copper lines, but broadband data services are needed for enhanced alarm and emergency response services, such as viewing streaming and captured video, as well as remotely arming and disarming systems or locking and unlocking doors. While ADT and other alarm companies historically used conventional public switched telephone networks to receive alarm event signals and other data for emergency response, the use of cellular and other broadband data networks services for alarm signals and these enhanced services has been growing rapidly. ADT currently uses a broadband connection for over 2.6 million (2,600,000) residential customers. At least seventy (75) percent of ADT's new residential customers opt for our home security and automation solutions, which rely on broadband for the enhanced services discuss above. ADT also uses broadband to offer remote video surveillance, video verification, and other enhanced services to our commercial customers in California and elsewhere.

7. Enhanced alarm and emergency response services are increasingly commonplace and required in California in particular. At least seven (7) California municipalities served by ADT, including Chico, Fremont, Fontana, Modesto, San Jose, Stockton, and Turlock, have adopted "verified response" policies, where video or on-the-ground confirmation of an emergency by an alarm company professional is required before police and/or fire departments will respond to the alarm or give the alarm a priority response. At least seventeen (17) other municipalities served by ADT across the United States also expressly require such video or on-the-ground confirmation.

8. Many broadband Internet access service (or "BIAS") providers, such as the wireless carriers and cable providers used by ADT and other alarm companies, now also offer competing alarm monitoring and emergency response services. Blocking, throttling, or de-prioritizing security video and other data transmissions for ADT's customers in locations in

2

Declaration of Thomas S. Nakatani in Support of Opposition to Preliminary Injunction Motions
(2:18-cv-02660-JAM-DB) (2:18-cv-02684-JAM-DB)

California and elsewhere could slow emergency assistance for those customers, or deny it to them entirely.

9. In the past, ADT has experienced blocking of our broadband data, which prevented ADT's customers from using enhanced alarm monitoring features such as remote operation through smart phone apps and video.

    a. In one example in 2015, a large swath of ADT customers in Puerto Rico using a specific BIAS provider suddenly lost the ability to use ADT's enhanced alarm services that enable customers to control their alarm systems remotely or to access their video surveillance cameras.  Analysis showed that this BIAS provider was blocking a critical timing port in the impacted communities, rendering the service unusable.  Due to this blocking, ADT could not establish communication with any system for a customer using this BIAS provider.  ADT could not complete the activation of any new customers using that BIAS provider.  And all existing customers using this BIAS provider could not access information about the devices in their homes, and could not access or control those devices remotely.  Upon being approached by ADT's technicians inquiring into the nature of the problem, the BIAS provider initially disclaimed any responsibility, notwithstanding that all of ADT's customers using this BIAS provider lost access to these enhanced services.  The issue took nearly two-and-a-half (2.5) months to resolve, during which time ADT's customers were without this service and ADT stopped offering the service to residential and business customers using this BIAS provider.  This blocking occurred during a time that net-neutrality rules were not in effect.  Service was restored only after the 2015 federal net-neutrality rules were released and were about to be implemented.

3

Declaration of Thomas S. Nakatani in Support of Opposition to Preliminary Injunction Motions
(2:18-cv-02660-JAM-DB) (2:18-cv-02684-JAM-DB)

      b. In another example from 2016, after the federal net neutrality rules went into effect, another BIAS provider operating in Ohio similarly blocked certain ports in a number of impacted communities, shutting down ADT's customers' ability to use enhanced services. During this time when the no-blocking rule was in effect, this BIAS provider resolved the blocking after only approximately two-and-a-half (2.5) weeks (more than seven (7) weeks faster than what happened in Puerto Rico).

10. ADT does not currently have information as to whether those instances of blocking were the result of any specific intent to discriminate against ADT in those locations. The BIAS provider that blocked ADT's services in Puerto Rico did not offer competing alarm monitoring services. The BIAS provider described in the second example did offer competing services. In both instances, ADT's customers were left unable to use our services for extended periods of time, diminishing these customers' ability to protect themselves or their property.

11. Based upon ADT's experience, ADT believes that an absence of non-discrimination regulations protecting the use of broadband services by alarm companies will lead to public safety and anti-competitive issues in California and elsewhere, particularly with respect to the growing use of broadband for video verification and other enhancements to alarm monitoring services.

12. Alarm service, like public and private emergencies response service, is a local business. ADT sales, installation, service, and guard/patrol service professionals operate within the communities that we serve. While ADT provides our services in communities throughout the United States, the vast majority of the electronic security industry is comprised of small businesses that serve a limited number of local communities. There are more than thirteen thousand (13,000) alarm companies operating in the United States today, with over four thousand (4,000) such companies licensed in the State of California. The sale, installation, service, and

4

Declaration of Thomas S. Nakatani in Support of Opposition to Preliminary Injunction Motions
(2:18-cv-02660-JAM-DB) (2:18-cv-02684-JAM-DB)

monitoring of alarm systems by ADT and other alarm companies is regulated through licensing by the State of California and in each state in which an alarm company conducts business; by regulations in each state regarding the sale, installation, and monitoring of alarm equipment; and by local ordinances for the registration of alarm systems that are professionally monitored.

13. Based on ADT's experience, ADT believes that regulatory protections for broadband usage at a state or local level, as opposed to under federal law, would still be effective to address public-safety and anti-competition concerns raised by discriminatory broadband practices, at least with respect to our customers in those communities so impacted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I signed this declaration on September 12, 2020, at Aurora, Colorado.

Thomas S. Nakatani